[No. H035037. Sixth Dist. Nov. 7, 2011.]

In re the Marriage of JOANNE and BENJAMIN GUILARDI.
JOANNE LAFARGUE-GUILARDI, Appellant, v.
BENJAMIN GUILARDI, Respondent.

## Counsel

Tarkington, O'Neill, Barrack & Chong, Robert A. Roth; Earle & Reimer, Janice L. Earle, Pauline R. Reimer; and Grace Kubota Ybarra for Appellant.

Bernard N. Wolf; Morgan, Duffy-Smith & Tidalgo, Donelle C. Morgan and Yanna Sukhodrev for Respondent.

## OPINION

**ELIA, J.**—After a protracted but unsuccessful effort to set aside a marital settlement agreement (MSA), appellant Joanne Lafargue-Guilardi (Wife) moved for pendente lite attorney fees for the proceeding, citing Family Code section 2030. The family court granted the motion of respondent Benjamin Guilardi (Husband) to dismiss Wife's request, finding an implicit waiver of statutory fees in the MSA. Wife appeals, contending that any waiver of attorney fees is inconsistent with the MSA and the law. Wife further contests the lower court's alternative finding that attorney fees for the set-aside proceeding were not justified under the circumstances presented. We find no error in the court's first ruling and must therefore affirm the order.

### Background

In April 2005, after a marriage of more than 16 years, the parties separated, and the following month they executed an MSA addressing division of property as well as support and custody of their 10-year-old daughter. The MSA was incorporated into a judgment filed on October 12, 2005.

On October 11, 2006, Wife moved to set aside both the judgment and the MSA, citing fraud, mistake, duress, perjury, and noncompliance with Family Code section 2100 et seq.[1] Her motion was denied in a July 28, 2009 decision (later subjected to minor correction) reflecting the court's finding that while the MSA was "inequitable on its face," that fact was insufficient to invalidate the agreement, as wife had "knowingly and willingly" entered into it. Not only had Wife failed to meet her burden to prove fraud, mistake, or duress, but she had intentionally destroyed the parties' prenuptial agreement to prevent its enforcement because she believed it was unfair. Although she was unaware of her right to spousal support, she knew she had the right to consult an attorney before signing the MSA; she chose not to do so, for "reasons known only to her."

Having determined the MSA to be valid, the court found moot a separate issue raised by Wife, the validity of the parties' prenuptial agreement. The court determined that Wife had failed to establish that she was forced by Husband to enter into that agreement. The court did find the waiver of spousal support to be unenforceable. Nevertheless, it denied Wife's request to

---

[1] All further statutory references are to the Family Code except as otherwise specified.

declare the entire prenuptial agreement void. The court found that Wife had had the ability to pay for an independent consultation with an attorney regarding the agreement, and that she had not asked Husband to pay for such services. Wife had also failed to prove unconscionability.

On June 8, 2009, Wife sought $867,638.26 in attorney fees for the "prosecution of her statutory and noncontractual claims under Family Code sections 2100 *et. seq.* and 2122 *et seq.* for the set aside of the parties' Judgment for Dissolution and Marital Settlement Agreement." The requested fees covered the period from September 25, 2006, through March 2, 2009. Husband moved to dismiss the motion based in part on a fee provision in the MSA allowing attorney fees to the prevailing party in an action related to the MSA. Wife defended her request, arguing that the prevailing party provision was inapplicable. On October 9, 2009, the superior court granted Husband's motion. Wife then brought this appeal.[2]

## *Discussion*

■ Section 2030 authorizes an award of pendente lite attorney fees to one party in a dissolution proceeding to the extent that the award is "reasonably necessary" to compensate that party for maintaining or defending the proceeding. Former subdivision (a) required the court to consider "the respective incomes and needs of the parties" in order to "ensure that each party has access to legal representation . . . to preserve each party's rights." (§ 2030, former subds. (a)(1), (2).)

In granting Husband's motion to dismiss Wife's request for fees, the lower court made two ultimate findings. First, it determined that while the MSA did not contain an express waiver of fees, its broad language conveyed an *implicit* waiver of any claims other than those available to the prevailing party in the proceeding. Even if, as Wife claimed, she had no intention to relinquish a known right, she "should have taken reasonable steps to understand the potential rights she was giving up before signing the agreement." The MSA, the court noted, did not have to outline every single right delineated in the Family Code. The document nonetheless "created an implication that Wife made every effort to understand her rights before signing the agreement, and knowingly gave up her right to 'any and all past,

---

[2] Wife filed her notice of appeal on December 3, 2009. This court denied Husband's motion to dismiss this appeal, although in a related case (*In re Marriage of Guilardi* (Oct. 13, 2010, H035208)) we issued a partial dismissal for untimeliness to the extent that the appeal pertained to the 2009 orders of July 28 and August 20.

present, and future claims.' " The court also rejected Wife's assertion that a relinquishment of future claims could never preclude need-based fees. Finally, the court concluded that even if the MSA allowed fees under section 2030, it was "not just to award attorney's fees to Wife where she unsuccessfully litigated an action to set aside the MSA, and was found to have willfully destroyed the pre-marital agreement."

Wife readily acknowledges the attorney fee provisions contained in the parties' MSA. She nonetheless renews her position that absent an explicit waiver either in the provision itself or expressed during the litigation, the MSA cannot supersede a party's entitlement to need-based fees under section 2030. However, while insisting that rights as a prevailing party and rights under the statute "can be simultaneously available," she does not explain how such a circumstance would apply in this case—that is, how the inconsistency between the two rights should be resolved where one party is the prevailing party but the other party is the one presumably in need.

■ Husband's response is of no assistance. He merely refers to family law texts and to *In re Marriage of Sherman* (1984) 162 Cal.App.3d 1132 [208 Cal.Rptr. 832], a case applying an MSA provision to *uphold* a fee award, and which did not discuss the availability of fees under the applicable predecessor statute to section 2030.[3] We further observe that judicial authority has not been universally consistent on the question of whether statutory counsel fees are available to the party unsuccessfully challenging an MSA. Some decisions foreclose recovery of statutory need-based fees when a valid settlement agreement contains either an explicit or an implied waiver of future claims. (See, e.g., *Fox v. Fox* (1954) 42 Cal.2d 49, 53 [265 P.2d 881] [court erred in awarding fees contrary to valid agreement expressly waiving additional attorney fees]; *Lesh v. Lesh* (1970) 8 Cal.App.3d 883 [87 Cal.Rptr. 632] [same, citing *Fox*]; *Gottlieb v. Gottlieb* (1957) 155 Cal.App.2d 715, 720 [318 P.2d 763] [denial of wife's statutory fees upheld based on explicit waiver in settlement agreement]; *Taliaferro v. Taliaferro* (1962) 200 Cal.App.2d 190, 198 [19 Cal.Rptr. 220] [implied waiver of fees in broad language of intent to settle "all claims between them"]; *Grolla v. Grolla* (1957) 151 Cal.App.2d 253, 260 [311 P.2d 547] [implied waiver of costs and fees].) Others have avoided the preclusive effect of settlement provisions waiving all future claims by allowing fees to prove invalidity of the agreement, particularly when that fact has not yet been ascertained. (See, e.g., *Locke Paddon v. Locke Paddon* (1924) 194 Cal. 73, 78–80 [227 P. 715] [notwithstanding settlement releasing each party from claims for attorney fees, court may award fees even if invalidity not proved]; *Spreckels v. Spreckels* (1952) 111

---

[3] See Civil Code former section 4370.

Cal.App.2d 529, 532 [244 P.2d 917] [pendente lite fees justified where validity and effect of settlement agreement had not yet been determined]; cf. *Patton v. Patton* (1948) 32 Cal.2d 520, 525 [196 P.2d 909] [where wife did not object to validity of agreement, court erred in awarding alimony and statutory counsel fees]; *Nacht v. Nacht* (1959) 167 Cal.App.2d 254, 268 [334 P.2d 275] [wife entitled to need-based statutory fees to challenge continued existence or validity of agreement after reconciliation, "whether she is right or wrong"].)

■ Here the parties' agreement stated: "If either party brings an action or other proceeding to enforce this Agreement, or to enforce or modify any judgment or order made by a court in connection with this Agreement or to obtain any judgment or order relating to or arising from the subject matter of this Agreement, the prevailing party shall be entitled to reasonable attorney's fees and other costs from the other party as established by the court of competent jurisdiction." The agreement also states its purpose at the outset, including the parties' intent to "[r]elinquish any and all past, present, and future claims that each may have against the property or estate of the other party . . . ." We agree with the lower court that this language broadly encompasses claims either party might bring against the other (or against that person's estate) arising out of the agreement. As in *Taliaferro* and *Grolla*, Wife's challenge to the validity of the agreement had already been found to be without merit at the time of the October 2009 order, and there was no exception, whether statutory, contractual, or equitable, precluding its enforcement.

Wife further protests, however, that statutory fee claims cannot be waived to the extent that they challenge the MSA provisions for child support and "other matters affecting the child's welfare." The factual premise of her assertion, however—that she was seeking fees "incurred advocating for the parties' child"—is unsupported by the record. Wife points to a one-paragraph entry in her declaration describing the provisions for child support and suggesting that the tax deductions for child support be allocated to her. Nowhere in her points and authorities did she argue that her motion to set aside the MSA had anything to do with "relief from the child support provisions," as she now represents. Instead, it generally addressed the transaction as a whole, asserting Husband's failure to comply with disclosure requirements, perjury, her own mistake of fact and law (resulting from lack of legal representation), duress in obtaining her execution of the MSA, and fraud. The result, she complained, was the inequitable *spousal* support she received and the unfair division of community property to which she had unknowingly agreed.

Wife makes much of her disadvantaged position in not being represented by counsel when she signed the settlement agreement. We regard this

contention as an indirect, belated renewal of her challenge to the validity of the MSA, which we may not review in this procedural context. In any event, its language reflects Wife's express acknowledgement of "the right and opportunity to seek independent advice and legal representation on any and all aspects of this Agreement." She signed the agreement having further acknowledged that she had read it "carefully and thoroughly [and] fully underst[ood] each of its provisions," and she waived the provisions of Civil Code section 1542.[4] The court on this occasion responded to Wife's claim that she could not have *knowingly* waived her right to statutory fees, by finding that she assumed the burden of understanding what she was giving up and that she did so "knowingly and willingly." Wife presents no basis for finding error resulting from this factual determination.

The family court additionally noted that "[a] prevailing party standard is used in agreements to discourage litigation and to make it clear that the losing party will pay." In that vein, the court made the alternative finding that even if the MSA were construed to permit a need-based award to Wife, it would not be justified under the circumstances presented, in light of Wife's prior unsuccessful attempt to set aside the MSA and her willful destruction of the prenuptial agreement. Husband makes no effort to defend this reasoning. Wife does not contend, however, that the court misapplied the factors it was required to consider under section 2032 and 4320;[5] she only disputes the court's rationale as an "extreme" punishment "so far out of proportion to Wife's acts as to exceed the court's authority." In any event, as we have already upheld the lower court's finding of waiver, it is unnecessary to decide whether the court properly exercised its discretion under the need-based fee statutes when it rejected Wife's request on this alternative ground. (See *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 318 [111 Cal.Rptr.2d 755] [noting that a "just and reasonable" award under § 2032 requires consideration of factors set forth in § 4320].)

---

[4] Civil Code section 1542 provides, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

[5] Section 2032 requires the court considering fees under section 2030 to determine to what extent such an award would be "just and reasonable," by evaluating "the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320." (§ 2032, subd. (b).) Section 4320 sets forth factors to be considered when awarding spousal support, including such things as the marketable skills of the parties, the need for education and training, the needs of the parties based on the standard of living established during the marriage, the obligations and assets of each party, the duration of the marriage, and the balance of hardships to each party. (§ 4320, subds. (a), (d), (e), (f), (k).)

*Disposition*

The order is affirmed. In the interests of justice, the parties shall bear their own costs on appeal.

Rushing, P. J., and Premo, J., concurred.

A petition for a rehearing was denied December 1, 2011, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied February 15, 2012. S198775.